## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**ADAM R. GARCIA**                                              **PLAINTIFF**

**v.**                              **No. 1:10-cv-54-DPM**

**CENTERPOINT ENERGY RESOURCES CORP.,**
**d/b/a CENTERPOINT ENERGY ARKANSAS GAS,**
**CENTERPOINT ENERGY ARKLA, and**
**RELIANT ENERGY ARKLA**                              **DEFENDANT**

### ORDER

Garcia alleges that Centerpoint, his employer, mistreated him because of his Hispanic heritage. He brings claims under Title VII, § 1981, and the Arkansas Civil Rights Act. Centerpoint moves for summary judgment, saying that most of Garcia's claims are untimely and none are supported by the record. Most of the material facts are undisputed. The Court takes those facts that are disputed in the light most favorable to Garcia. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).

**1. Background.** Garcia started working for Centerpoint's predecessor Arkla in 1995 as a temporary, part-time employee reading meters and doing service work. A year later, he became a full-time service technician. Garcia was denied his third week of vacation time in 1998 or 1999 at year's end. *Document No. 20, at 2–3*. The district manager, Terry Rollins, made a comment about "GD Mexicans" in Garcia's presence sometime before that. *Id. at 3*. In 2002, Centerpoint asked Garcia to supply his driver's license and social security card to comply with immigration laws. *Document No. 20, at 4*. The company says it was checking documentation in all its employees' files.

Garcia says that at other times Centerpoint also treated him differently because he was Hispanic — first in 2002 by permitting his voluntary demotion under circumstances it knew (or should have known) were not his fault, and there again in 2009 by failing to reinstate him when the true facts became known. Garcia says that he was employed by Centerpoint for more than a decade before being assigned a brand-new company vehicle, far longer than other employees had to wait. And he claims that he has been paid less than Caucasian employees in his position. *Document No. 1, at 3–4*.

In 2002, Garcia was reading meters in a rural area when a well-digger

hit a gas line with his backhoe. *Doc. No. 18-1, at 16–17*. Garcia called his supervisor, who instructed him to have the well-digger dig another hole — a "bell hole" — upstream from the damaged area so that Garcia could clamp the broken gas line shut. Garcia descended into the bell hole, then half dug, and was in it when the well-digger broke the gas line again. *Ibid*. Protocol required Garcia to get out of the bell hole and dig another to expose unbroken pipe. But "[t]he first thing that went through [Garcia's] mind [was], Get this gas off of me." *Ibid. at 18*. So Garcia stayed in the bell hole and clamped off the line.

Garcia had been verbally warned a year or two earlier about being in a gaseous atmosphere. *Document No. 18-1, at 19*. He was therefore worried that this second infraction would cost him his job. On 11 September 2002, Garcia was suspended for the gas-line incident. *Document. No. 20, at 9*. That same day, he submitted a signed, typewritten document asking to be demoted from service technician to senior meter reader. Centerpoint granted his request.

Some seven years passed. In late November or early December 2009, Garcia asked to be reinstated as a service technician. Only then did he argue to management that a supervisor had ordered him to take the actions that led

to his suspension and demotion. *Document No. 9–1, at 12–13.* The record contains several versions of the events surrounding the gas-line incident. The undisputed facts are these: as Garcia testified on deposition, his supervisor did not order Garcia to enter or stay in a gaseous hole; Garcia decided to do so in the moment because he was ordered to fix the problem and had no back-up; eventually, the story gained common currency at Centerpoint that Garcia's supervisor had ordered him into the gaseous hole, resulting in a supposedly unfair demotion.

**2. Demotion.** This claim fails as a matter of law for three reasons.

First, it is untimely. Garcia's demotion claim comes too late whether considered under Title VII, § 1981, or the Arkansas Civil Rights Act. His demotion occurred in 2002. Garcia filed his EEOC charge in March 2010 and this case in July 2010. His demotion occurred far outside the window under Title VII (180 days), § 1981 (four years), or the State Act (one year). 42 U.S.C.A. § 2000e–5(e)(1) (West Supp. 2011); ARK. CODE ANN. § 16-123-107 (c)(3); *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004).

Second, Garcia cannot assert his demotion through a continuing-violation theory under Title VII, pulling this 2002 event in the wake of his

2010 EEOC charge. *Betz v. Chertoff*, 578 F.3d 929, 937–38 (8th Cir. 2009). Like termination or failure to promote, demotion is a discrete act. This kind of event is actionable when committed, not later, after the statutory period has closed. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002). Garcia's failure to timely assert discrimination in his 2002 demotion bars him from doing so now.

Third, the demotion claim fails on the merits. Garcia asked to be demoted. He had been disciplined for not following company policy about working in gaseous space before. He thought he was going to be fired, and his immediate supervisors recommended termination. Garcia testified in his deposition that neither of those men harbored any discriminatory bias against him. And while Garcia tries to undo that testimony in a recent affidavit, *Document No. 18–2*, the Court disregards this effort. The Court sees no unclarity or confusion in Garcia's unequivocal deposition testimony about the lack of discriminatory intent. Garcia's supposed revelation, after getting Centerpoint's summary-judgment papers, that he was in a state of denial on this score does not justify any clarification. A party may not rewrite sworn testimony to create a dispute of fact. *City of St. Joseph, Missouri v. Southwestern*

*Bell Telephone*, 439 F.3d 468, 475–76 (8th Cir. 2006).  Considering the record as a whole, no reasonable juror could conclude that Centerpoint's decision (through Terry Rollins) to grant Garcia's request for demotion, and reject his concededly unbiased supervisors' recommendation for termination, was actually a pretext for discrimination.  *Gibson v. American Greetings Corp.*, No. 11-1467, 2012 WL 686198, at **6–7 (8th Cir. 5 Mar. 2012).

   **3.   Failure to promote.**   Even if Garcia was wholly innocent of misconduct in the gas-line incident and everyone at Centerpoint knew it, his pre-November 2009 failure-to-promote claim fails.  An essential element of this claim is that the plaintiff "was qualified and applied for a promotion to an available position."  *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 937 (8th Cir. 2007).  Garcia, it is undisputed, did not apply for reinstatement between September 2002 and November 2009.

   Failing to formally apply for a position is not fatal to a discrimination claim when "the plaintiff made every reasonable attempt to convey his interest in the job to the employer."  *Chambers v. Wynne School District*, 909 F.2d 1214, 1217 (8th Cir. 1990) (quotation omitted).  But Garcia has produced no evidence that anyone at Centerpoint knew, before November 2009, that he

wanted the service-technician job back. *Document. No. 9-1, at 12–13.* Steven Lewis, the area manager, recalled that after the gas leak Garcia came to him and said that he "had a lot of stress in his life and just couldn't concentrate on doing his service work and asked if he could just go back to reading meters[.]" *Document No. 18-6, at 12.* Garcia's pre-November 2009 claim for not getting promoted fails because he never "applied for a promotion" back to his former job. *Allen,* 475 F.3d at 937.

Garcia's post-November 2009 claim fails for a different reason. Although Garcia had made clear by that point he was interested in a service-technician position, no such positions were then open in the Batesville area. *Document No. 20, at 14.* No position opened between November 2009 and March 2011, when Garcia was deposed. *Document No. 9-1, at 42.* While Garcia says Centerpoint can create a position whenever it wants, he offers insufficient proof on this point to create a jury issue. Speculation and conclusions will not get a claim to the jury. *Conseco Life Insurance Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010). Because Garcia has not been denied promotion "to an available position[,]" summary judgment is appropriate on his post-November 2009 claim too. *Allen,* 475 F.3d at 937

**3. Vehicles.** Garcia did not receive a brand-new company vehicle until about a dozen years after beginning work for Centerpoint. The Eighth Circuit has held that a company's failure to provide an employee a computer did not rise above a "mere inconvenience," and therefore was not an adverse employment action under Title VII. *Enowmbitang v. Seagate Technology, Inc.,* 148 F.3d 970, 973 (8th Cir. 1998). Garcia has proved even less than Enowmbitang did. Garcia had vehicles. He has not offered any evidence that his assigned vehicles were deficient, only that they were not new.

Assuming his vehicle claim gets to the pretext stage, it fails on the undisputed facts. In 2006, four fellow employees drove vehicles that were as old as Garcia's or older. *Document No. 9–12.* He points to another employee who got three new trucks in a ten-year period. *See Document No. 9–6, at 4.* But Garcia lost one opportunity to get a new vehicle because he "was having quite a few accidents." *Document No. 9–2, at 13.* Garcia got a new Ford Escape in 2007. *Document No. 20, at 10.* Then he had another wreck. And the record shows that who got a new vehicle was determined by Centerpoint's business needs, not seniority. *Document No. 9–3, at 21–22.* Garcia has provided one metric—length of employment—for measuring whether he was similarly

situated to the employees who received new vehicles before he did.  This metric does not meet the "rigorous" standard for establishing a comparator at the pretext stage.  *Torgerson*, 643 F.3d 1031, 1051 (8th Cir. 2011).  A comparable employee must be similarly situated in all relevant respects, not just one.  Garcia has not made the required showing to take the vehicle issue to the jury.

**4. Lower pay.**  Assuming, without deciding, that Garcia's claim for wage discrimination is timely, he has failed to make a *prima facie* case on it.  Taking the evidence in the light most favorable to Garcia, he has shown several things.  At some point around 2000 his pay was below a "market value" pegged to the 50th-percentile wage for that position in similar companies.  *Document No. 18–6, at 5.*  A supervisor raised this point with Garcia and promised to go to bat for him to change it.  At some time thereafter, Garcia got a 7% raise.  Garcia, however, has not offered any evidence that any other person with his job at Centerpoint was being paid better than he was.  Nor has he produced any evidence that his wages continued to be deficient — by any measure — after his raise.  At the *prima facie* stage, Garcia's burden is to demonstrate that "members of other racial groups

were treated more favorably." *Clearwater v. Independent School District No. 166*, 231 F.3d 1122, 1127 (8th Cir. 2000).  He has not done so.

**5. Hostile work environment.**  Garcia alleges that Centerpoint is liable for the "hostile environment it has created by its employees, demotion, and failure to promote, along with the difference in pay." *Document No. 1, at 5*. "The working conditions," he continues, "are such that a reasonable person would find them intolerable." *Ibid.* "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).  For various reasons, Centerpoint is entitled to judgment as a matter of law on Garcia's hostile-environment claim too.

First, exhaustion. The standard is whether Garcia's hostile-environment claim is like, or reasonably related to, the substance of his timely EEOC charge. *Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).  Garcia checked the boxes asserting discrimination based on race, national origin, and "other," specifying union activities. The particulars of his

EEOC allegations are set out in the margin.*

Garcia argues here that everything that happened to him adds up to a hostile environment based on his Hispanic origins.  Read generously, Garcia's charge suffices.   It asserts wrongful accusations, equipment denials, an offensive remark, pay disparity, and wrongful immigration inquiries — all based on Garcia's ethnicity.  Whatever the merits of those assertions, Garcia said enough in his EEOC charge to notify Centerpoint about alleged origin-based hostility in the workplace and to exhaust his administrative remedies.

Second, the merits.  There is a threshold issue: Can Garcia's hostile-environment claim rest in part on his demotion or the lack of promotion?  These are discrete, actionable events.  *Morgan* says the demotion is untimely as an individual claim, but may be used "as background evidence in support of a timely claim."  536 U.S. at 113.  Whether to weigh demotion and failure

---

* "I am of Hispanic ancestry.  I am a 2nd generation Hispanic American citizen, being born in Batesville, Arkansas on [redacted].
 "I was hired by CenterPoint Energy (Arkla Gas) in 1994 and became permanent in 1995.  Since being hired, I have been accused of wrongdoing by management although I followed directions of my supervisor, James Fitzgerald.  I have lost job titles and responsibilities which resulted in pay loss, and have been denied equipment to work with.  I have been referred to as a 'G D Mexican' and required to prove my right to be analyzed by the Immigration Reform & Control Act of 1990.  Since April 2008, I have been involved in union organization movement.  I have suffered discrimination because of my Hispanic heritage and I am concerned about my job because of my union activities." *Document No. 9–15.*

to promote in the hostile-work-environment balance, when they cannot support liability on their own, remains a bit unclear nonetheless. *E.g.*, *Morgan*, 536 U.S. at 113–121; *Betz*, 578 F.3d at 937–38.   There is no evidence that Garcia's voluntary demotion or Centerpoint's later failure to reinstate him was unjust or discriminatory.   But the Court has considered the asserted hostility of these things along with the following: in Garcia's presence, his supervisor used the term "GD Mexicans" in the late 1990s; Garcia lost his third week of vacation in 1998 or 1999; though a supervisor agreed Garcia was underpaid in the larger marketplace, Garcia did not get an adequate (in his view) raise until after 2000; he was asked to provide a copy of his driver's license and social security card in 2002; and he didn't get a new company vehicle until 2007, while other employees got new vehicles sooner.

Taken in the light most favorable to Garcia, all of this just does not create an environment so oppressive that the conditions of Garcia's employment were altered.   The Court understands how these circumstances would be vexing to any employee.   But the whole falls short of the permeating intimidation, ridicule, and insult that typify a hostile environment.   *E.g.*, *E.E.O.C. v. CRST Van Expedited, Inc.*, Nos. 09-3764, 09-3765, 10-682, 2012 WL

555510, at *17–23 (8th Cir. 22 Feb. 2012); *Singletary v. Missouri Dep't of Corrections*, 423 F.3d 886, 892–93 (8th Cir. 2005).

The situation must be objectively offensive. Considering all the circumstances, this situation was not. *Singletary*, 423 F.3d at 892–93. These few events occurred during roughly sixteen years of employment. The alleged hostility toward Hispanics, in other words, is thin over time. While Rollins's reference to "GD Mexicans" was repugnant, several years later Rollins was the one who vetoed firing Garcia over the gas-line incident. Stray remarks, even by a supervisor, are insufficient as a matter of law. *Singletary*, 423 F.3d at 893 (discussing cases). Garcia offers no evidence of wide-ranging hostility to Hispanics. And of course the law obligates employers to document the immigration status of all new employees. 8 U.S.C.A. § 1324a. Asking for Garcia's paperwork as part of a companywide audit of compliance with immigration laws, *Document No. 9, at 3; Document No. 9–9*, was benign and routine. There is no evidence of any Centerpoint crusade against Hispanic-ancestry employees like Garcia. In sum, the record contains insufficient evidence to create a trial-worthy issue on Garcia's hostile-environment claim.

* * *

Motion for summary judgment, *Document No. 9*, granted.    Motion in limine, *Document No. 22*, denied as moot.    Garcia's complaint is dismissed with prejudice.

So Ordered.

_DP Marshall Jr._
D.P. Marshall Jr.
United States District Judge

*15 March 2012*